DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
BAIRD, Presiding Judge.
Anthony R. Hudson and Andrea B. Compton-Hudson were married on June 17, 1989. Michael Elisha Hudson ("Elisha") was born to the couple on August 25, 1994. On June 28, 1995, Anthony filed a complaint for divorce in the Summit County Court of Common Pleas, Domestic Relations Division. In his complaint, Anthony prayed for temporary and permanent custody of Elisha. On July 17, 1995, Andrea answered the complaint and counterclaimed for divorce, also praying for temporary and permanent custody of Elisha.
On August 22, 1995, the magistrate ordered psychological evaluations of Anthony and Andrea. On August 23, 1995, Elisha was placed in the temporary custody of Andrea pending the completion of the psychological evaluation. In her order, the magistrate found that Anthony had threatened court personnel and accused them of racial bias.
The matter of Hudson v. Hudson was scheduled for trial to be held on July 11, 1996. On August 19, 1996, the trial court issued a decree granting the parties a divorce on the grounds of incompatibility. The trial court granted to Andrea sole parental rights and responsibilities over Elisha, and granted Anthony companionship in accordance with the Standard Order of Visitation. The trial court awarded Andrea child support in the amount of $295.25 per month. The court also divided the marital property and marital debt equally between Andrea and Anthony.
On September 3, 1996, Anthony moved the trial court for a new trial pursuant to Civ.R. 59 and also moved for a change of venue, alleging bias on the part of the trial court. Two days later, Anthony moved the trial court to "set aside custody orders."[1] On September 16, 1996, Anthony appealed the August 19, 1996 divorce decree. He assigns no errors.[2]
However, the arguments in Anthony's pro se brief focus on the issue of the allocation of parental rights, therefore we may assume that he assigns as error the trial court's allocation of sole parental rights and responsibilities over Elisha to Andrea. There is also some discussion regarding the division of marital property. We affirm.
 I. Parental Rights
R.C. 3109.04 governs the allocation of parental responsibilities by the court and provides in part:
 (B)(1) When making the allocation of the parental rights and responsibilities for the care of the children under this section in an original proceeding, * * * the court shall take into account that which would be in the best interest of the children. * * *
* * *
 (C) Prior to trial, the court may cause an investigation to be made as to the character, family relations, past conduct, earning ability, and financial worth of each parent and may order the parents * * * to submit to medical, psychological, and psychiatric examinations.
* * *
 (F)(1) In determining the best interest of a child pursuant to this section, whether an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
 (a) The wishes of the child's parents regarding his care;
* * *
 (c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
 (d) The child's adjustment to his home, school, and community;
 (e) The mental and physical health of all persons involved in the situation;
 (f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
"The best interest of the child" should be the overriding concern in any child custody case. Miller v. Miller (1988),37 Ohio St.3d 71, 75. "The trial court is vested with broad discretion to decide matters relating to allocation of parental rights and responsibilities for the care of minor children, and its decision is subject to reversal only upon a showing of an abuse of that discretion." (Citation omitted.) Donovan v.Donovan (1996), 110 Ohio App.3d 615, 618. An "abuse of discretion" implies a decision that is unreasonable, arbitrary or unconscionable. Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 23. Where there is competent, credible evidence in the record to support an award of custody to one parent, such an award will not be reversed by a reviewing court as against the weight of the evidence. Id. It is for the trial court to resolve disputes of fact and weigh the credibility of the witnesses. Id.
Upon review of the record, we find that there is substantial credible and competent evidence to support the trial court's allocation of parental rights and responsibilities to Andrea. Throughout the trial court proceedings in this matter, Anthony has repeatedly accused Andrea of abusing and neglecting Elisha. These accusations were refuted to the satisfaction of the trial court. In addition, as the divorce process progressed, the record reflects that Anthony's pleadings became increasingly disjointed, nonsensical, and hysterical. For example, at one point, Anthony begins to refer to himself as "The Honorable Anthony R. Hudson" in his pleadings. In addition, Anthony has hurled accusations of racism, bias, "fantasy fact finding," and breaches of judicial ethics at the trial court.
The trial court, in its divorce decree, stated that:
 Plaintiff appears to be a very bright, well educated individual who is struggling for a meaningful direction in his life. The psychological testing and evaluation conducted in this case reveal a man who is very self-absorbed and absolutely convinced of his superiority over other persons. He has little capacity to see another person's point of view. His basic approach to life appears to be that things are done his way and his alone. He has very little ability to compromise or to realize the value of others who may disagree with his point of view.
The trial court believed that if Anthony were allocated sole parental rights over Elisha, he would "quickly isolate this child from all other significant persons in the child's life except himself to the child's detriment." On the other hand, the trial court found that Andrea "understands that it is important that Michael Elisha have a good relationship with his father and has consistently provided visitation to him throughout the pendency of this case."
As for the relationship and interaction between Elisha and Anthony, the trial court was "quite concerned about [Anthony's] enmeshed and almost symbiotic relationship with his son."[3]
Because the record supports the trial court's decision allocating sole parental rights and responsibilities to Andrea, there was no abuse of discretion.
 II. Property Division
R.C. 3105.171 governs division of marital property and provides in part:
 (C)(1) Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally, but instead shall divide it between the spouses in the manner the court determines equitable.
A trial court has broad discretion when dividing marital property, and we will not disturb that division absent an abuse of that discretion. Baker v. Baker (1992), 83 Ohio App.3d 700, 702. Again, abuse of discretion implies an attitude that is unreasonable, arbitrary, or unconscionable. Id.
Anthony alleges in his brief that the trial court failed to consider that Andrea lost a key to his residence, resulting in "burglaries" and loss of property, for which Anthony argues Andrea should be held accountable. In addition, Anthony argues he is entitled to a "diamond ring, cellular phone etc. allegedly stolen and known to be in [Andrea's] possession" and that Andrea should be responsible for "at least half of the debt of the student loans and housing expenses during the term of the marriage."
In the divorce decree, the trial court listed Anthony's and Andrea's marital property and marital debts and, pursuant to R.C.3105.171(C) and R.C. 3105.171(F), found that an equal division of the property and debt was appropriate. In order to effectuate this division, the court awarded all of the marital property to Andrea, but also awarded her all of the marital debt. The trial court stated that the parties had divided their household goods and furnishings to their mutual satisfaction and that each party was to retain those household goods, furnishings, and personal property in his possession.
We find that the record supports such a division of marital property and debt and therefore the trial court did not abuse its discretion in dividing the property.
The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Summit Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
 Exceptions. _______________________________ WILLIAM R. BAIRD
FOR THE COURT
SLABY, J.
MAHONEY, J. CONCUR
(Mahoney, J., retired Judge of the Ninth District Court of Appeals, sitting by assignment pursuant to Article IV, § 6(C), Constitution.)
[1] It is unclear from the record how the trial court ruled on these motions.
[2] App.R. 16 governs appellate briefs and provides in part:
 (A) Brief of the Appellant. The appellant shall include in its brief, under the headings and in the order indicated, all of the following:
* * *
 (3) A statement of the assignments of error presented for review, with reference to the place in the record where each record is reflected.
[3] Anthony indicated, among other things, that Elisha was "blessed," "had the power," and that father and son were developing "alpha wave telepathy" between them.