[Cite as *Lewis v. Lewis*, 2022-Ohio-2090.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK  COUNTY

KATHRYN A. LEWIS,

    PLAINTIFF-APPELLEE,          CASE NO.  5-21-32

    v.

MICHAEL E. LEWIS, JR.,          O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Hancock County Common Pleas Court
Domestic Relations Division
Trial Court No. 2017 DR 00303

**Judgment Affirmed**

**Date of Decision:  June 21, 2022**

**APPEARANCES:**

    *William E. Clark* **for Appellant**

    *Thomas H. Vogtsberger* **for Appellee**

Case No. 5-21-32

**MILLER, J.**

{¶1} Defendant-appellant, Michael E. Lewis, Jr., appeals the September 20, 2021 judgment of the Hancock County Court of Common Pleas, Domestic Relations Division. For the reasons that follow, we affirm.

{¶2} Michael and Kathryn A. Lewis were married on June 19, 2004. Four minor children were born of the marriage. On September 8, 2017, Kathryn filed a complaint for divorce with the Hancock County Court of Common Pleas, Domestic Relations Division. Michael answered the complaint on September 27, 2017.

{¶3} The matter came before the magistrate on January 13, 14, and 16, 2020 and February 10, 11, and 25, 2020 for final hearing.[1] At the hearing, the trial court granted Kathryn's oral motion to amend the complaint to include the additional grounds as having lived separate and apart for more than twelve months.

{¶4} On March 29, 2021, the magistrate's decision was filed. Relevant to this appeal, the magistrate valued Kathryn's dental practice at $1,640,000.00 and this amount was allocated to Kathryn.

{¶5} On April 12, 2021, Michael filed initial objections to the magistrate's decision. On May 3, 2021, Kathryn filed her response to Michael's initial objections. On June 21, 2021, Michael filed his supplemental objections to the

---

[1] The gap of more than two years between the initial divorce pleadings and the final divorce hearing was due, at least in part, to the time needed for (1) the resolution of a related criminal matter filed against Michael in the Hancock County Court of Common Pleas and (2) evaluations and appraisals of the parties' businesses and assets.

-2-

magistrate's decision. In relevant part, Michael argued that the magistrate erred in adopting a valuation of Kathryn's dental practice that did not include the reduction of debt that was paid down in 2019. Michael also contended that the magistrate erred by adopting a marketability discount for Kathryn's dental practice which included brokerage, legal, and accounting fees and other costs associated with selling the business. On July 1, 2021, Kathryn filed her memorandum in opposition of Michael's supplemental objections to the magistrate's decision. On July 8, 2021, Michael filed his response to Kathryn's memorandum in opposition.

{¶6} On August 17, 2021, the trial court overruled all of Michael's objections to the magistrate's decision. On September 20, 2021, the trial court issued the decree of divorce. The parties were granted a divorce on the grounds of having lived separate and apart for more than 12 months. The trial court also valued Kathryn's dental practice at $1,640,000.00, which included a 20% discount for lack of marketability and assigned the asset to Kathryn.

{¶7} Michael filed his notice of appeal on October 12, 2021. He raises three assignments of error for our review, which we address together.

### Assignment of Error No. I

**The Trial Court erred in establishing the value of Kathryn's dentistry by failing to adjust the value for reduction of debt of the dentistry between the valuation date and the termination of marriage date.**

**Assignment of Error No. II**

**The Trial Court erred in establishing the value of Kathryn's dentistry by allowing a marketability discount on the basis of costs of sale where no sale is contemplated.**

**Assignment of Error No. III**

**The Trial Court erred in the division of property under O.R.C. 3105.171 by failing to properly evaluate Kathryn's dentistry.**

{¶8} In his assignments of error, Michael alleges the trial court erred in establishing the value of Kathryn's dental practice in two ways.[2] First, Michael contends the trial court erred by failing to adjust the value of the dental practice to account for the reduction of the practice's debt between the valuation date and the termination of marriage date. Second, Michael alleges the trial court erred by reducing the value of the dental practice by allowing a marketability discount despite a sale of the practice not being contemplated. We disagree.

{¶9} "An appellate court generally reviews the overall appropriateness of the trial court's property division in divorce proceedings under an abuse-of-discretion standard." *Stocker v. Stocker*, 3d Dist. Hancock No. 5-17-11, 2017-Ohio-8434, ¶ 12. A trial court's decision allocating marital property and debt will not be reversed absent an abuse of discretion. *Jackson v. Jackson*, 3d Dist. Paulding No. 11-07-11, 2008-Ohio-1482, ¶ 15, citing *Holcomb v. Holcomb*, 44 Ohio St.3d 128 (1989).

---

[2] The parties agree that the dental practice is a marital asset and should be assigned to Kathryn.

{¶10} The process of fashioning an equitable division of marital property will generally require a trial court to assign or adopt valuations for marital assets. *Gilsdorf v. Gilsdorf*, 3d Dist. Marion No. 9-13-34, 2014-Ohio-5000, ¶ 11. In determining the value of assets, the trial court "is not required to adopt any particular method of valuation." *Huelskamp v. Huelskamp*, 185 Ohio App.3d 611, 2009-Ohio-6864, ¶ 27 (3d Dist.). "Rigid rules to determine value cannot be established, as equity depends on the totality of the circumstances." *Lotz v. Lotz*, 3d Dist. Auglaize No. 2-14-06, 2014-Ohio-5625, ¶ 18, quoting *Baker v. Baker*, 83 Ohio App.3d 700, 702 (9th Dist.1992).

{¶11} "The valuation of property in a divorce case is a question of fact." *Schwarck v. Schwarck*, 3d Dist. Auglaize No. 2-11-24, 2012-Ohio-3902, ¶ 27. "Accordingly, a trial court's decision pertaining to the valuation of property will be reviewed under a manifest weight of the evidence standard and will not be reversed so long as it is supported by some competent and credible evidence." *Id.* "If the parties to the divorce submit evidence in support of conflicting valuations, the trial court 'may believe all, part, or none of any witness's testimony.'" *Mousa v. Saad*, 3d Dist. Marion No. 9-18-12, 2019-Ohio-742, ¶ 14, quoting *Huelskamp* at ¶ 27. Because the trial court is in the best position to evaluate the credibility of witnesses, "[a] reviewing court should be guided by a presumption that the findings of a trial

court are correct." *DeWitt v. DeWitt*, 3d Dist. Marion No. 9-02-42, 2003-Ohio-851, ¶ 11.

**{¶12}** Although another dentist used to work at the practice as Kathryn's business partner, Kathryn bought out his interest in the practice when he retired. (Final Hearing Tr., Vol. I, at 58). Now, Kathryn is the practice's only dentist and owns 100% of the business. (*Id.*).

**{¶13}** At the final hearing, Terri Lastovka, who is a business appraiser and forensic accountant, arbitrator, mediator, business consultant, CPA, and attorney, gave expert testimony on Kathryn's behalf regarding the valuation of the dental practice. (*Id.* at 26-31); (Plaintiff's Ex. 20).

**{¶14}** Lastovka used multiple methodologies when valuating Kathryn's dental practice, including the asset-based approach, earnings approach, and market approach. (Final Hearing Tr., Vol. I, at 57-58); (Plaintiff's Ex. 20). Lastovka determined the value of the dental practice using each of the aforementioned methodologies. (Final Hearing Tr., Vol. I, at 58). After determining that each of the valuation methodologies resulted in valuations that were "really close," Lastovka used a blend of the methods to arrive at her valuation of $2,050,000 as of December 31, 2018. (*Id.* at 58-59). Lastovka then discounted the $2,050,000 value by 20% to account for a lack of marketability and arrived at the valuation of $1,640,000 as of December 31, 2018. (*Id.* at 59-60).

{¶15} Although Michael's trial counsel extensively cross-examined Lastovka, Michael did not call an expert witness to provide a valuation of the dental practice. The trial court adopted Lastovka's valuation of the dental practice of $1,640,000 as outlined in Plaintiff's Exhibit 20.

{¶16} Nonetheless, Michael argues that the trial court erred in establishing the value of Kathryn's dental practice by (1) failing to adjust the value of the dental practice to account for the reduction of the practice's debt between the valuation date and the termination of marriage date and (2) reducing the value of the dental practice by allowing a marketability discount.

{¶17} We first address Michael's argument that the trial court erred in establishing the value of Kathryn's dental practice by failing to adjust the value of the dental practice to account for the reduction of the practice's debt between the valuation date and the termination of marriage date.

{¶18} Although Lastovka's valuation of Kathryn's dental practice was made as of December 31, 2018, the date for the termination of the marriage was the date of the commencement of the final hearing, January 13, 2020. At the final hearing, Lastovka acknowledged that between December 31, 2018 and December 31, 2019, Kathryn made additional payments on a loan owed by the dental practice to State Bank associated with Kathryn "buying out" her previous business partner. Specifically, as of December 31, 2018, the balance on the loan was approximately

$357,843.00. (Final Hearing Tr., Vol. I, at 83); (Defendant's Ex. A). However, throughout 2019, Kathryn made payments on the loan totaling approximately $175,486.00, which reduced the loan balance to approximately $182,357.00 as of December 2019. (Final Hearing Tr., Vol. I, at 83); (Defendant's Ex. A).

**{¶19}** Michael contends that because Lastovka's valuation of Kathryn's dental practice does not account for the reduction in the debt of the dental practice between December 31, 2018 and December 31, 2019, the trial court erred by adopting a valuation that did not account for the decrease in the dental practice's debt during this time.

**{¶20}** At the final hearing, Lastovka stated she was aware that in September 2019, Lewis began paying excess payments on the dental practice's loan to State Bank. In an attempt to account for the reduction in debt from December 31, 2018 to December 31, 2019, Michael's trial counsel asked Lastovka to recalculate the 2018 valuation with the 2019 debt values. Lastovka performed the requested calculation which resulted in a valuation of Lewis's equity interest in the dental practice of $1,780,000.00 after the 20% discount for lack of marketability. (Defendant's Ex. B)

**{¶21}** However, Lastovka stated that entering the 2019 debt values with the 2018 calculation made the analysis "disconnected." (Final Hearing Tr., Vol. II, at 92). Specifically, although she had updated numbers for the dental practice's debt

as of December 31, 2019, Lastovka did not have updated information to change other variables, such as the dental practice's cash, receivables, dental supplies, revenues, and profits. (*Id.* at 92-93).

**{¶22}** Lastovka stated that she cannot say that the value of the dental practice at the time of the final hearing is closer to the value as of December 31, 2019 than the initial report as of December 31, 2018. *(Id.* at 93). According to Lastovka, it is not possible, using appropriate accounting principles to adjust only the debt from December 31, 2018 to December 31, 2019 and calculate an accurate valuation of the practice. (*Id.*). Lastovka stated that the disconnect resulting from updating only the debt values creates a disconnect which is "inappropriate and violates uniform standards of principal professional appraisal practice." (*Id.* at 119). Rather, Lastovka stated that the valuation the court should rely on is the December 31, 2018 valuation of the dental practice that was issued in October 2019 because it includes all of the financial data as of a consistent date, namely December 31, 2018. (*Id.* at 118).

**{¶23}** Thus, after reviewing the record, we find that competent and credible evidence supported the trial court's valuation of the dental practice using Lastovka's valuation as of December 31, 2018. "'In valuing a marital asset, a trial court is neither required to use a particular valuation method nor precluded from using any method. * * * A trial court may rely in whole or in part on an expert's opinion when

setting a value on marital property[.] * * * There are no rigid rules used by courts to determine value as equity depends on the totality of the circumstances.'" *Hissa v. Hissa*, 8th Dist. Cuyahoga Nos. 93575 and 93606, 2010-Ohio-3087, ¶ 22, quoting *Bunjevac v. Bunjevac*, 8th Dist. Cuyahoga No. 80069, 2002-Ohio-2956, ¶ 17. Furthermore, "'[t]he trial court is not required to use the same de facto termination date consistently in valuating [assets] of the marital estate when the trial court has adequately explained its reasons for deviating.'" *Bunjevac* at ¶ 12, quoting *Kramer v. Kramer*, 8th Dist. Cuyahoga No. 74166, 1999 WL 561527, * 1. Accordingly, the trial court did not err by not adjusting the value of Kathryn's dental practice to account for the reduction in the practice's debt between the valuation date and the termination of marriage date. *See Cronin v. Cronin*, 2d Dist. Greene Nos. 02-CA-110 and 03-CA-75, 2005-Ohio-301, ¶ 13 (finding that the trial court did not abuse its discretion in choosing a value for the property because the value chosen was a figure presented by an expert witness).

{¶24} Next, we turn to Michael's argument that the trial court erred by reducing the value of Kathryn's dental practice by 20% due to a lack of marketability. In support of his position, Michael argues that a discount for marketability is not appropriate because no sale of Kathryn's dental practice is contemplated. However, courts have permitted a discount for lack of marketability for closely-held businesses even when no sale is contemplated. *See Bohme v.*

*Bohme*, 2d Dist. Montgomery No. 26021, 2015-Ohio-339, ¶ 5, 27; *Kuper v. Halbach*, 10th Dist. Franklin No. 09AP-899, 2010-Ohio-3020, ¶ 27-28.

**{¶25}** In support of his position that the trial court erred by applying a marketability discount to Kathryn's dental practice, Michael relies heavily on *Sweet v. Sweet*, 11th Dist. Ashtabula Nos. 2007-A-0003 and 2008-A-0003, 2009-Ohio-1924, ¶ 44. In that case, the Eleventh District Court of Appeals reviewed the trial court's valuation of car dealerships and an antique car collection. *Id.* at ¶ 35-46. When determining the valuation of the husband's antique car collection, the trial court deducted the sales commission from the gross value of the automobile collection "in the event * * * the car collection would need to be sold as part of the marital division." *Id.* at ¶ 38. With respect to husband's car dealerships, the trial court applied a marketability discount to the gross valuation of the businesses. *Id.* at ¶ 41-42.

**{¶26}** On appeal, the Eleventh District Court of Appeals found that the trial court erred by reducing the valuation of the antique car collection by the costs of sale because "[t]here was no evidence that the sale of the collection was actually contemplated or that it would be necessary for [husband], being a professional automobile dealer, to use another professional to sell the collection." *Id.* at ¶ 38. However, with respect to husband's car dealerships, the appellate court found that the trial court did not err by applying a lack of marketability discount despite no sale

of the car dealerships being contemplated. *Id.* at ¶ 44-45. In explanation, the Eleventh District Court of Appeals stated, "[u]nlike a reduction for cost of sale, the non-marketability discount is a factor in determining the fair market value of a business. The applicability of the discount is not dependent on the intention or likelihood of the business being sold." *Id.* at ¶ 44.

{¶27} Michael attempts to analogize the marketability discount applied to the valuation of Kathryn's dental practice to the reduction for the cost of sale applied to the antique car collection at issue in *Sweet*. Specifically, Michael contends that the lack of marketability discount applied to Kathryn's interest in her dental practice relates exclusively to the cost of sale of the business, and, because no sale is contemplated, such a discount is inappropriate. We disagree.

{¶28} In Plaintiff's Exhibit 20, Lastovka's written valuation of Kathryn's dental practice, Lastovka states that the $2,050,000 value of the dental practice "represents a nonmarketable, controlling interest" in Kathryn's dental practice. (Plaintiff's Ex. 20). Lastovka further described the marketability discount as follows:

> All other things being equal, an investment is worth more if it is marketable than if it is not marketable since investors prefer liquidity over lack of liquidity. Marketability is defined as the ability to convert the property to cash quickly with minimal transaction and administrative costs in so doing and with a high degree of certainty of realizing the expected amount of net proceeds. Interests in closely-held businesses are illiquid relative to similar, freely-traded investments.

* * *

Empirical studies have been designed to qualify the discounts for lack of marketability for interest in closely-held entities. They consist of restricted stock studies, pre-IPO studies, and sales of limited partnership interests.

(Plaintiff's Ex. 20).

{¶29} At the final divorce hearing, Lastovka stated that the lack of marketability discount represents "a lack of liquidity because it takes time and energy to sell these types of assets." (Final Hearing Tr., Vol. I, at 59). Although Lastovka did reference fees associated with sale of the practice, such as brokerage fees and legal fees, the record here indicates that the lack of marketability discount Lastovka described is due to the closely-held nature of the business and is distinguishable from the cost of sale discount applied to the valuation of the antique car collection in *Sweet* which related exclusively to the fees associated with a hypothetical sale of the car collection. *Sweet* at ¶ 45. Rather, we find the lack of marketability discount applied to Kathryn's dental practice to be akin to that applied to the husband's car dealerships in *Sweet*.

{¶30} In overruling Michael's objections to the magistrate's decision, the trial court stated that the considerations which factored into Lastovka's analysis of the marketability discount included "business broker fees, due diligence costs, legal costs, and other costs associated with selling the business." (Doc. No. 254). However, as the trial court noted, Lastovka "also refers to the difficulty in selling a

dentistry, the time it would take [to sell a dental practice], decreased patient retention, and the competitive dental market in Findlay in applying the marketability discount, all of which affect the marketability of the dentistry in this context." (*Id.*).

**{¶31}** Moreover, once again we note that although Michael's trial counsel engaged in an extensive cross-examination, Michael did not present an expert to contest Lastovka's valuation of the dental practice or application of lack of marketability discount. Although Michael was not required to present an expert witness regarding the value of Kathryn's dentistry practice, by not presenting another witness or evidence to challenge Lastovka's valuation of the dentistry practice, Lastovka's valuation of the dental practice was largely unrefuted. Thus, for the aforementioned reasons, we do not find that the trial court abused its discretion by applying a lack of marketability discount to the valuation of Kathryn's dental practice. *See Bohme*, 2015-Ohio-339, ¶ 27, 33 (finding that the trial court did not err by accepting an expert witness's valuation of the husband's solely-owned dental practice that included a 30% discount for lack of marketability).

**{¶32}** Accordingly, Michael's first and second assignments of error are overruled.

**{¶33}** In Michael's third assignment of error, he argues that the trial court erred in the division of property under R.C. 3105.171 by failing to properly determine the value of Kathryn's dental practice. Specifically, Michael argues that

due to the alleged errors addressed in his first and second assignments of error, the trial court failed to equitably divide the marital property. However, because we found Michael's first and second assignments of error to be without merit, Michael's third assignment of error is overruled.

{¶34} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ZIMMERMAN, P.J. and SHAW, J., concur.**

**/jlr**